UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RHONDA WHETSTONE,**<br>**o/b/o U.W., MINOR CHILD**<br>**Plaintiff,**<br><br>v.<br><br>**NANCY A. BERRYHILL, Acting**<br>**Commissioner of Social Security,**<br><br>**Defendant.** | Civ. No. 16-8602 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Rhonda Whetstone, on behalf of her minor son, U.W., brings this action pursuant to 42 U.S.C. § 1383(c)(3) to review a final decision of the Administrative Law Judge and affirmation by the Appeal Council denying Childs Supplemental Security Insurance to U.W. For the reasons set forth below, the matter will be remanded for further development of the record.

**I.  Background[1]**

On January 16, 2013, Ms. Whetstone filed an application for Social Security Insurance benefits on behalf of her son, U.W.[2] (R. 123.) U.W. was a five-year-old preschooler at the time and has attention deficit hyperactivity disorder ("ADHD"). (R. 17.) The alleged disability had an onset date of June 17, 2011. (*Id.*) On February 25, 2013, U.W.'s claim was denied (R. 81–73), and on

---

[1] The administrative record (ECF no. 6) is cited as "R. __." The Brief in Support of Plaintiff (ECF no. 11) is cited as "Pl. Br." Defendant's Brief (ECF No. 15) is cited as "Def. Br."

[2] There is some confusion over the date of the application for the benefits. In the Decision (R. 14–28), the ALJ notes that the application for the benefits occurred on December 19, 2012. (R. 14.) However, the Application Summary states that the application was filed on January 16, 2013. (R. 123.) As the latter is an exhibit in the record upon which the ALJ's decision was based, I will assume the application was filed on January 16, 2013.

1

September 25, 2013 and after a second review by a different person, his claim was denied again. (R. 87–90.) Disagreeing with these determinations, Ms. Whetstone then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 91.) The hearing occurred on February 4, 2015 (R. 35), which Ms. Whetstone attended unrepresented (*see* R. 38), and the ALJ, after considering the record, determined that U.W. was not under a disability within the meaning of the Social Security Act from the time of the filing of the application. (R. 14.) She then sought review with the Appeals Council on June 9, 2016. (R. 8–9.) The Council denied her request for review, finding no reason under the rules to review the decision of the ALJ.[3] (R. 1.) She now appeals to this Court.

Ms. Whetstone has two main arguments as to why the decision of the ALJ should be reversed or remanded for further consideration. (Pl. Br. 1.) First, she argues that she ineffectively waived her right to have counsel present at her proceedings and that her hearing with the ALJ was prejudiced by her lack of counsel. (*See id.* at 5–12.) Second, she argues that the medical and functional analyses by which the ALJ rendered her decision were not supported by substantial evidence. (*See id.* at 12–14.) The Government contests both of these arguments, saying both that substantial evidence supports the final decision and that Ms. Whetstone and U.W. knowingly and intelligently waived the right to representation at the hearing and were not prejudiced by that lack of representation. (Def. Br. 2, 4.)

## II. Discussion

### A. Waiver of counsel

Though a claimant does not have a constitutional right to counsel at a Social Security disability hearing, the Social Security Act and its accompanying regulations afford a claimant that right. *Vivaritas v. Comm'r of Soc. Sec.*, 264

---

[3] The Appeals Council listed the reasons for review as (in brief): abuse of discretion; error of law; not supported by substantial evidence; existence of a broad policy or procedural issue that may affect the public interest; or new and material evidence rendering the decision contrary to the weight of all the evidence now in the record. (R. 1.)

2

Fed. App'x 155, 157 (3d Cir. 2008) (citing 42 U.S.C. § 406; 20 C.F.R. § 406.1705); *but see Bentley v. Comm'r of Soc. Sec.*, No. 10-2714, 2011 WL 4594290, at *9 (D.N.J. Sept. 30, 2011) ("A lack of counsel, itself, is not sufficient cause for remand."). The claimant must be given notice of that right, and, in order to move forward with the proceeding without counsel, must waive that right knowingly and intelligently. *Id.* (citing *Smith v. Schweiker.* 677 F.2d 826, 828 (11th Cir. 1982)); *see Yakley v. Astrue*, No. 12-857, 2013 WL 1010671, at *4 (D.N.J. Mar. 13, 2013) (noting that the Third Circuit has acknowledged the Seventh Circuit's "knowingly and intelligently" test without explicitly adopting it). However, there is no rigid protocol an ALJ must follow when obtaining this waiver. *McGrew v. Colvin*, No. 12-0144, 2013 WL 2948448, at * 5 (D.N.J. Jun. 14, 2013) (citing *Vivaritas*, 264 Fed. App'x at 158 n.1). Should the claimant proceed without counsel, the ALJ has a heightened duty to assist the claimant in developing the administrative record and "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," because a claimant unrepresented by counsel is not "presumed to have made his/her best case before the ALJ." *Id.* at 157–58 (quoting *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)).

A district court reviewing the denial of benefits where a claimant proceeded *pro se* may remand the case if there is "a showing of clear prejudice or unfairness at the administrative hearing." *Id.* at 158 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)). If the ALJ fails to obtain a valid waiver of counsel before proceeding, the burden shifts to the Government to show that the ALJ nevertheless adequately developed the record in the absence of counsel. *Id.* (quoting *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007)).

After reviewing the transcript of the hearing with the ALJ, I conclude that Ms. Whetstone knowingly and intelligently waived the right to have counsel at that proceeding.[4] On top of receiving two letters reminding her of the right to

---

[4] Excerpted below is the entire exchange between Ms. Whetstone and the ALJ concerning her representation at the hearing:

3

ALJ: Currently in the room we have a hearing reporter making sure there is an accurate recording of the hearing. And you are here unrepresented, and I know the hearing reporter had spoken to you in the waiting room about whether you had tried to obtain a representative. She mentioned to me that you had gone to a few places and you weren't able to obtain those representatives. So I still have to read you a few things about your right to representation.

WTN [Ms. Whetstone]: Okay.

ALJ: And at the end of what I discuss with you, you have the right to request an adjournment to try and go ahead and try find another representative, or we can continue today. It's your choice.

WTN: Okay.

ALJ: So let me read you a few things. When we sent you the Notice of Hearing, we sent you a list of representatives that might help you represent your son, in the area. A representative can help you find evidence, explain things to you, make arguments on your behalf, but you're not required to have one. Our Notice stated that there are agencies in the area that would represent you free of charge if you qualified. Now generally, a lawyer or other representative cannot receive a fee unless I approve it, and at that point it's only limited to no more than 25 percent of what we call the past due benefits. So if your child is awarded benefits, there would be a period of benefits due for the time since you applied. That's called past due benefits. And the fee would be limited to no more than 25 percent of that, or $6,000, whichever is less.

WTN: Okay.

ALJ: They might charge you, though, for things like copying records and getting medical evidence—

WTN: Yeah.

ALJ: —and things like that. Were you aware of these options? You did mention you went to some.

WTN: Yes. My daughter, she has the same thing he has. I did it a few years back with her, my daughter, already.

ALJ: Oh, okay. Okay.

WTN: All righty.

ALJ: So you have the right to go forward today and have the hearing. I'm under the same obligation to help you develop any records. This case is pretty well developed. You have been submitting stuff as you've gone along.

WTN: Yes.

ALJ: And I do have the most recent, it looks like—

WTN: Yes.

4

counsel and a detailed form concerning that right (R. 91, 95–96, 103–07), Ms. Whetstone was reminded by the ALJ several times throughout the hearing that she could have counsel present with her. (R. 36–39.) The ALJ told her of the availability of programs which could provide her free or low-cost representation (R. 36–37), the nature of the fees should she attempt to retain counsel for this proceeding (R. 37), and the obligation of the ALJ to develop the record should she proceed *pro se*. (R. 37–38.) At the end of this exchange, the ALJ asked Ms. Whetstone in no uncertain terms if she wished to continue with the hearing and Ms. Whetstone replied in the affirmative. (R. 38 (ALJ: So at this point you have to make a decision. Would you like to go forward today? [Ms. Whetstone]: I would like to go forward today.).)

The facts of this case differ from those of both *Yakely v. Asture*, No. No. 12-857, 2013 WL 1010671 (D.N.J. Mar. 13, 2013) and *Vivaritas v. Comm'r of Soc. Sec.*, 264 Fed. App'x 155 (3d Cir. 2008). In *Yakely*, the only notification to the claimant of his right to have counsel was a letter sent to him and a barebones four-question colloquy between the claimant and the ALJ, where the ALJ simply asked the claimant if he understood the letter that he received.

---

ALJ: —your most recent visit to Children's Specialized Hospital. And I want to ask you, if we go forward today, I'll ask you about what treatment your son is getting—

WTN: Mm-hmm.

ALJ: —any other doctors he's seeing, or anything you haven't been able to get, and I'll help you get that. So at this point you have to make a decision. Would you like to go forward today?

WTN: I would like to go forward today.

. . .

ALJ: Okay, so at the end of the hearing I have a form that I'd like you to sign. It just says that I've advised you of your right to representation—

WTN: Yes.

ALJ: —given you the opportunity for adjournment, but you've declined and chosen to go forward.

WTN: Yes.

(R. 36–39.)

5

2013 WL 1010671, at *1 (remanding to the ALJ upon finding a lack of knowing and intelligent waiver of the right to representation and prejudice in the proceeding that resulted from the lack of representation). In *Vivaritas*, the Third Circuit focused on the open question of claimant's mental limitations and impairment (which were at issue in deciding her qualification for disability benefits) and chastised the ALJ for not delving further into the issue of knowing and intelligent waiver upon encountering evidence and testimony of the claimant's mental limitations. 264 Fed. App'x at 160. No such mental impairment has been alleged in this case, nor does the record suggest that Ms. Whetstone had any impairment that raised a potential issue as to her ability to knowingly and intelligently consent to the waiver.[5] For the same reasons, *Curry v. Barnhart*, No. No. 05-2350, 2006 WL 1192920, at *1 (E.D. Pa. Jan. 25, 2006) (Report and Recommendation) is inapt here, as the sixty-year-old claimant there had, at best, a seventh grade education and could not read or write, allegations not made in this case nor evidenced in the record.[6]

---

[5] In her brief, Ms. Whetstone raised the issue of the internal guidelines (HALLEX: Hearings, Appeals, and Litigation Law Manual) published by the Commissioner and argues that the guidelines require the ALJ discuss or explain certain issues in her opening statement. (Pl. Br. 8–9.) The HALLEX provisions are not irrelevant, but they lack the force of law and create no judicially enforceable rights. *Bordes v. Comm'r of Soc. Sec.*, 235 Fed. App'x 853, 859 (3d Cir. 2007) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)). Even assuming the specific provision cited by Ms. Whetstone (HALLEX-I-2-6-52(A)) created a judicially enforceable right, however, the record does not suggest that the provision was violated. Not only did the ALJ "secure on the record" Ms. Whetstone's acknowledgment of the right to representation and affirmation to proceed *pro se* (R. 38), she did so after explaining the procedure of the hearing (R. 35–36), the procedural history of the case (R. 36–37), and the issues involved (R. 35, 38), as prescribed by the guidelines (which also allows grants to the ALJ the discretion to format her opening statement). Ms. Whetstone's statements concerning her prior experience with obtaining SSI benefits for her daughter, which she implied were successful, did not suggest a need for further inquiry. (R. 37.)

[6] The magistrate judge in *Curry* noted that a "more sophisticated claimant" would have grappled better with the questions put forward by the ALJ and countered with supportive evidence in the medical record. 2006 WL 1192920, at *4. To be sure, it is preferable to have counsel. But Ms. Whetstone, by her admission at the hearing, implied that she was familiar with these proceedings and that she had been successful in obtaining benefits for her daughter a few years earlier. (R. 37.)

6

### B. Development of the record

Because Ms. Whetstone knowingly and intelligently waived her right to representation, the burden lies with her to show that the ALJ did not adequately develop the record under her heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts." *Vivaritas*, 264 Fed. App'x at 157–58 (citing *Reefer*, 326 F.3d at 380); *cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("Consequently, the burden of showing that an error is harmful normally falls upon the party attacking agency's determination."); *Parker v. Berryhill*, No. 16-271, 2017 WL 1022579 (W.D. Pa. Mar. 16, 2017) ("Thus, if [the claimant] did not knowingly and voluntarily waive her right to representation, then the ALJ bears the burden of demonstrating that the record was adequately developed. [Her] duty in this instance is heightened."); *Sudler v. Berryhill*, No. 15-729, 2017 WL 1197676, at *10 (D. Del. Mar. 30, 2017) ("ALJs have a duty to develop a full and fair record in social security cases. Accordingly, an ALJ must secure relevant information regarding a claimant's entitlement to social security benefits. This is so even though the claimant bears the burden to prove his disability." (citations omitted)).

Ms. Whetstone, in her brief, points to several places in the record of the hearing where the ALJ failed to probe into issues raised by Ms. Whetstone regarding the state of U.W.'s condition. (Pl. Br. 10–12.) For example, she states that she raised U.W.'s semi-monthly behavioral therapy sessions but that the ALJ did not request any updated records. (R. at 11.) She also claims that the ALJ failed to explain any of the six domains that would be used to establish disability or what Ms. Whetstone had to prove under each. (*Id.*) She argues that these actions fail to live up to the "special duty owed to *pro se* claimants." (*Id.*) The Government counters that the ALJ adequately asked Ms. Whetstone about what evidence should be admitted into the record (R. 6–7); that, in line with the Commissioner's regulations, the ALJ considered a fully developed record that included questioning about U.W.'s medical diagnosis, his medical providers,

7

his treatment, his behavior and academic performance in school, and his behavior at home (among other things) (R. 8); and that, assuming there was any new evidence that was missing from the proceeding, Ms. Whetstone had the opportunity to present that evidence to the Appeals Council or to this Court, as she has been represented by counsel since the determination by the ALJ. (R. 7.)

Although this is a close case, it does involve the welfare of a child who cannot speak for himself. I will find that Ms. Whetstone has met her burden of establishing that the ALJ failed to fully develop the record and that this failure caused prejudice to U.W. *Shinseki*, 556 U.S. at 409. The hearing lasted less than twenty minutes (and a significant amount of that time was occupied by the ALJ's careful colloquy regarding waiver of an attorney). (R. 35, 60). At several points, Ms. Whetstone provided new information or evidence of U.W.'s disability, information that suggested avenues of inquiry or the need for more evidence. First, Ms. Whetstone pointed out that U.W. had been suspended for a day and was threatened with other potential suspensions. (R. 45.) The ALJ did not get into the specifics of the particular incident that led to the suspension, only asking if it was "behavioral" or "academic." (*Id.*) The ALJ then mentioned that the records regarding his academic performance were "a little bit old," but did not seek an update. (*Id.*) In following up on U.W.'s academic development, The ALJ simply asked "Is [his grade level] the same? He's functioning, performing on the grade level?" and "Like reading and writing and math?" and received the responses "Yeah" and "Yes, mm-hmm." (*Id.*) Similarly, while discussing U.W.'s behavioral therapy treatment, the ALJ asked Ms. Whetstone about the behaviors she witnessed from U.W. while on medication. (R. 48.) Rather than get a specific description of these behaviors, the ALJ accepted Ms. Whetstone's minimal affirmative response that there was a difference, and moved on. (*Id.*)

As they went further into U.W.'s behavior while at school, it was mentioned that U.W. received his support in-classroom with an accompanying

8

teacher (as opposed to being pulled out and placed in a separate classroom). (R. 52.) Ms. Whetstone explained that this teacher "come[s] in and sit[s] with [U.W.] during a certain period of time of the class." (*Id.*) The ALJ did not seek a questionnaire or any other form of evidence from this teacher, nor did she ask Ms. Whetstone about any of this teacher's other observations. In the accompanying decision, the ALJ relied on statements made by Ms. Whetstone to doctors in their evaluations and later assigned little weight to the main teacher's testimony, reasoning that it was not supported by other evidence, including Ms. Whetstone's testimony. (R. 20, 27.) While the statements of a special education teacher may not be conclusive on the subject of whether U.W. has a disability, the ALJ did conclude from the record that "his teachers have noted improvement as well" and "the claimant's mother's testimony and allegations [to be] not fully credible," despite Ms. Whetstone suggesting that he was still having issues at school and in the classroom (e.g., throwing things when frustrated). (R. 27, 53.) Similarly, there was some confusion over whether the school did not think it was necessary for U.W. to have an Individualized Education Plan (IEP) or whether that service was simply unavailable at the school. (*See* R. 53–55.) Furthermore, Ms. Whetstone reported getting phone calls during the week (which have lowered in frequency from the beginning of that school year) from the principal and teachers regarding U.W.'s behavior. (R. 56.) The hearing ended with the ALJ making the single request that she be furnished a copy of the suspension warning. (R. 57.)

Also in the hearing, while discussing U.W. behavioral therapy treatment and his behavior while on medication, the ALJ asked, "What are some of the things that still remain that cause you to feel that he meets, you know, Social Security's definition of disability?" (R. 49.) Despite Ms. Whetstone's declaration that she was familiar with the Social Security system or her response of "Definitely" (*id.*), it is far from clear that Ms. Whetstone knew or was familiar with any of the elements in establishing a disability or the six domains evaluated in determining the existence or functional equivalence of an impairment. Nowhere in the hearing was this explained to her; nor did the ALJ

9

take the time to explain what needs to be considered in the determination. To be sure, it is not necessary for the ALJ to explain every element in the claim or equip the applicant to act as her own lawyer. Still, it could have greatly assisted the unrepresented U.W. to know what further evidence might assist the ALJ in her determination.

As I have noted, this is not merely an unrepresented adult, but an unrepresented child, whose case is being pursued by his mother, who of necessity is not regularly present during the school day. Although she obtained benefits for her elder daughter, she cannot not be presumed to be a sophisticated actor within the Social Security system. Layered on top of this is the duty of the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore *all* the relevant facts" when presented with an unrepresented claimant. *Reefer*, 326 F.3d at 380 (emphasis added).

U.W. is now represented by counsel; based on the considerations mentioned above, I believe the record should be supplemented with the aid of an attorney. I do not direct a result, but whether the ALJ's decision is the same or different, it will have been with the benefit of a skillful presentation on a full record.

### III. Conclusion

I will therefore remand this case to the ALJ in order to allow counsel for U.W. to present whatever additional testimony and documentation counsel or Ms. Whetstone may wish to proffer for the ALJ's consideration.

An appropriate order accompanies this Opinion.

Dated: November 2, 2017

*[signature]*

**KEVIN MCNULTY**
**United States District Judge**